# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
* * *

| | |
|---|---|
| DAVID BURNS,<br><br>    Plaintiff,<br><br>v.<br><br>LONA, et al.,<br><br>    Defendants. | Case No. 3:20-CV-0534-RCJ-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 20] |

Plaintiff David Burns ("Burns") claims Defendants Radek Dvorak ("Dvorak"), Efrain Lona ("Lona"), and Gavin Liggett ("Liggett") (collectively referred to as "Defendants") violated his Eighth Amendment rights after they sprayed pepper spray on another inmate outside of his cell. Defendants moved for summary judgment arguing the case should be dismissed for a variety of reasons. (ECF Nos. 20, 22.)[2] Burns opposed the motion, (ECF No. 25), and Defendants replied. (ECF No. 27.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 20), be granted.

I.   **FACTUAL BACKGROUND**

Burns is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while Burns was housed at the High Desert State Prison ("HDSP"). On July 14, 2019, at approximately 7:45 p.m. an incident occurred near Burns's cell involving another inmate. (ECF No. 20-1 at 2.) According to the incident reports, which are undisputed by Burns, Lona witnessed one inmate, named Willis, pass contraband from the bottom of a cell on the upper tier. (Id.) Lona ordered Willis to "lock down", however these commends were ignored. (Id.) Lona then went to Cell

---

[1]   This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]   ECF No. 22 consists of Burns's medical records filed under seal.

No. U6A37, where he saw Willis run inside the cell and immediately throw something in the toilet and flush. (*Id.*) Lona motioned for the assistance of another correctional officer to open the cell and then instructed the inmates in the cell to come out and place their hands on the wall. (*Id.*) The first inmate in the cell, Willis, complied with the commands. However, the second inmate, Loucious, did not. (*Id.* at 2-4.)

Rather, as Lona was preparing to search the cell, Lona observed Loucious come towards Leggit in an "aggressive manner" and argue with him. (*Id.* at 2.) At this point, Lona positioned himself between Loucious and Leggit and ordered Loucious to place his hands on the wall. Loucious did not comply. (*Id.*) Lona then attempted to grab Loucious's hand and placed him against the wall. (*Id.*) While on the wall, Loucious pushed away and turned towards Lona, who placed Loucious in a headlock to place him on the ground. (*Id.*) Loucious then picked Lona up by his legs and took him to the ground. Loucious attempted to get on top of Lona, who still had a hold of his head. (*Id.*) Lona rolled to his right side and was able to place Loucious face down, all while Loucious continued to fight and resist. (*Id.*) At this point, Lona took out his pepper spray and sprayed Loucious.[3] (*Id.*) At this point, Lona was able to place restraints on Loucious's wrists. (*Id.*) Once Loucious was restrained, a nurse arrived to conduct a medical evaluation of everyone directly involved in the incident. (*Id.*)

At thet time of this incident, Burns was housed in Cell No. U6A40. (ECF No. 20-2 at 2.) Burns claims that the pepper spray was sprayed in front of Cell No. U6A39 which is "attached to" his cell. (ECF No. 25 at 16.) Burns contends the pepper spray was used near the crack of the front door of his cell and on the ground of the door front. (*Id.* at 1-2.) Burns alleges he began "choking up and gagging" because of the pepper spray. (*Id.* at 17.) Burns asserts that he asked Defendants to clean the front door of his cell, and all

---

[3]   There is no indication in the records provided how long Lona sprayed Loucious. However, it appears that the spray only occurred one time and was only applied to Loucious. (ECF No. 20-6.) In addition, according to Lona's declaration, the spray did not produce the expected spray powder. (*Id.* at ¶ 13.) Thus, the pepper spray was sprayed onto Loucious only and it does not appear that it sprayed out into the Tier area or cell blocks generally.

replied in the affirmative. (*Id.*) However, Burns claims no one immediately cleaned the area causing him to cough throughout the night. (*Id.*)

According to Lona's declaration, the pepper spray canister did not produce the expected spraying power. (ECF No. 20-6 at 1.) In addition, Lona and Liggett state the incident occurred to the right of Cell No. U6A38, which is at least 10 feet away from Burns's cell. (*Id.*; ECF No. 20-7 at 1.) Neither Lona nor Liggett recall any inmate other than Loucious, who was directly sprayed with the pepper spray, complaining about its effects. *(Id.)* Finally, Dvorak states Unit porters cleaned the area with soap and water sometime before the shift change, which occurred approximately two and half hours after the incident at 9:00 p.m. (ECF Nos. 25 at 3-4; 20-8 at 2.)

Burns filed a grievance related to the issue. (ECF No. 20-3 at 5-6.) In the response, NDOC personnel stated the area was cleaned with soap and water, as required by AR 406.03. (*Id.* at 4; ECF No. 20-4 at 5.)

Defendants submitted Burns's medical records under seal in support of the motion for summary judgment. (ECF No. 22.) Defendants allege there are no indications in Burns's medical records that he complained of exposure to pepper spray. (ECF Nos. 20-5; 22-1.) Burns admits he did not file a medical kite to be seen because he would not have received an appointment at HDSP for four to six months and if he had asked for a "man down" he would have been billed for an eye flush. (ECF No. 25 at 4.)

## II.   PROCEDURAL HISTORY

On September 21, 2020, Burns filed a civil rights complaint under 42 U.S.C. § 1983 alleging he received second-hand exposure to oleoresin capsicum ("pepper spray"), commonly referred to as pepper spray, while Burns was incarcerated at High Desert State Prison ("HDSP"). (ECF No. 4.) On April 29, 2021, the District Court screened the complaint and permitted Burns to proceed on a claim that Defendants violated his Eighth Amendment right against cruel and unusual punishment clause based on the conditions of his confinement. (ECF No. 3.) Defendants filed an answer on November 10, 2021. (ECF No. 13.)

Defendants filed a motion for summary judgment arguing this case should be dismissed because: (1) Burns cannot produce evidence to support his Eighth Amendment claim; (2) the use of pepper spray on another inmate near Burns' cell was a justified use of force that caused no injury to Burns; (3) there is a lack of personal participation; and (4) Defendants are entitled to qualified immunity. (ECF No. 20.) Burns opposed the motion, (ECF No. 25), and Defendants replied. (ECF No. 27.)

### III.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury

could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### IV.   DISCUSSION

#### A.   Applicable Legal Standard

As noted above, the District Court screened the complaint and permitted Burns to proceed on a claim that Defendants violated his Eighth Amendment right against cruel and unusual punishment based on the *conditions of his confinement*. (ECF No. 3) (emphasis added.) The Eighth Amendment protects against excessive bail, excessive fines, and cruel and unusual punishment. U.S. Const. amend. VII. Under the "cruel and unusual" prong of the Eighth Amendment, several subcategories of claims have

developed over time. These include claims for an excessive use of force, deliberate indifference to serious medical needs, and general claims related to an incarcerated individual's conditions of confinement. Each of these claims apply different standards that must be met in order for a plaintiff to prevail on an Eighth Amendment claim.

Here, the parties and the Court agree that this lawsuit involves only one claim based on an alleged violation of Burn's Eighth Amendment right against cruel and unusual punishment. However, the parties disagree with each other—and the Court's screening order—as to which standard applies to the claim. In the screening order, the District Court permitted Burns to proceed on a single claim: a violation of his Eighth Amendment rights against cruel and unusual punishment based upon Burns's *conditions of confinement*. (ECF No. 3.) However, Defendants argue that pursuant to United States Supreme Court precedent, the Court cannot analyze Burns's claim under this standard. (ECF No. 20 at 5.) Rather, Defendants argue the applicable standard that applies to Burns's claim is the standard applicable to the "excessive use of force." (*Id*.)

Burns disagrees. (ECF No. 25 at 6-8.) Burns argues that the "use of force" standard is not applicable to this case and goes on to argue that his claim is also not a "conditions of confinement" claim. (*Id.*) Rather, Burns claims that the proper standard applicable to his claim is the standard for deliberate indifference to a serious medical need. (*Id*.)

The District Court screened this case and determined that the lawsuit could proceed on a single claim based on a violation of Burn's Eighth Amendment right against cruel and unusual punishment due to the *conditions of his confinement*. (ECF No. 3.) Neither party sought reconsideration of the screening order nor did either party object to the District Court's determination that the standard applicable to this case is the *conditions of confinement* standard. The Court will not reconsider the screening order at this time, nor will it second guess the determination made by the District Court as to the standard applicable to Burns's claim. Therefore, the Court finds that the proper standard to be applied to this claim is the conditions of confinement standard.

///

### B. Conditions of Confinement

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). "[T]he deprivation alleged must be, objectively, sufficiently serious" and "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted). As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation. *Id*. To establish deliberate indifference, the plaintiff must show some evidence that the prison official knew of and disregarded an excessive risk to inmate health or safety. *Id*. at 837. When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

The condition at issue here is the impact pepper spray had on Burns, who was not the inmate the pepper spray was used upon and who was in his cell at the time of the incident. The Court assumes for purposes of deciding this motion that prolonged exposure to pepper spray may be sufficiently serious condition to support the objective prong of a conditions of confinement claim. Therefore, the Court focuses upon the "subjective element" and whether prison officials were deliberately indifferent to the risk

to Burns in failing to immediately clean the area after using pepper spray on another inmate. The facts are disputed between the parties in several respects as it relates to Burns's alleged exposure to the pepper spray. Specifically, the parties disagree upon where the pepper spray incident occurred, whether Burns asked any of the named defendants to clean the area, and how long it took to clean the area. As Burns is the non-moving party, the Court construes these facts in the light most favorable to Burns. However, even assuming all the facts as stated by Burns are true, the Court finds that Burns's claim fails on the subjective element.

Here, Burns claims that the pepper spray incident occurred outside of his cell door. He also asserts that immediately thereafter, while coughing and gagging, he expressly asked Defendants—at different times—to clean the area. Burns claims each Defendant, in some way, agreed that the area would be cleaned and ultimately the area was cleaned, but this did not occur for thirteen hours. Burns does not claim, however, that at any time after he was allegedly exposed to the pepper spray that he was deprived of water to clean himself, food, a change of clothes, or even prevented from leaving his cell. Burns does not claim that he requested or was denied a shower, nor does he claim that there was anything inadequate with the ventilation system in his cell. In fact, Burns admits he never requested to see a medical staff member or a doctor, nor did he send a medical kite seeking any type of medical assistance asserting that he was otherwise substantially impacted by the pepper spray.

Rather, he simply claims that the pepper spray caused him to cough and gag. He asserts that while he was coughing and gagging, he asked officials to clean up the pepper spray, which they agreed to do. Based on the record, it does not appear that Burns ever told prison officials that the pepper spray was causing him any significant distress or medical issues. Moreover, the prison officials did not refuse to clean the area. To the contrary, they each agreed to do so.

The parties dispute the time it took for the clean up to occur. Defendants claim the area was cleaned within approximately two hours, whereas Burns claims it took thirteen.

Even assuming Burns's claims are true, it does not appear that the failure to clean the area was done with reckless disregard to a substantial risk to Burns's safety. It is undisputed that the pepper spray was sprayed once on another inmate outside of Burns's cell while his door was shut. According to Burns, Defendants allegedly saw him coughing and agreed to clean the area.[4] According to Defendants, no other inmate (other than the inmate who was directed sprayed) complained about any adverse effects from the pepper spray following the incident. Moreover, Burns has not come forward with evidence that any other inmate was impacted by the pepper spray that day, nor has he presented any evidence of adverse effects to any other bystander inmate or himself from the disbursement of pepper spray.

In fact, Burns has failed to come forward with any evidence: (1) that prison officials failed to follow their policies with respect to the use of pepper spray during the incident; (2) that the delay in cleaning the area was deliberate or otherwise done with reckless disregard to Burns's safety; or (3) that Burns was under any substantial distress or having an excessive reaction to the pepper spray other than the transient effects of pepper spray that would have put prison officials on notice that there was a substantial risk to Burns of failing to immediately clean the affected area. Therefore, Burns has failed to come forward with evidence to establish that prison officials acted in reckless disregard to his safety for failing to immediate the clean area where the pepper spray was used. *See e.g., Allen v. Bosley*, 253 Fed. Appx. 658, 660 (9th Cir. 2007) (rejecting claim of deliberate indifference to serious medical needs based on allegations by inmate that he suffered from coughing, choking, and gagging after pepper spray was used on another inmate). As Burns cannot establish the subjective element of his claim, summary judgment should be granted.

///

///

---

[4] Defendants claim that they were never requested by Burns to clean the area and assert that they did not see any other inmate, aside from the inmate who was directly sprayed by the pepper spray, have any reaction the pepper spray incident.

## V. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 20), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 20) be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED** this 4th day of November, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**